UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN DOE,<br><br>                Petitioner,<br><br>v.<br><br>ANTONE MONIZ, PATRICIA HYDE,<br>TODD M. LYONS, KRISTI NOEM,<br>PAMELA BONDI, DONALD J. TRUMP<br><br>                Respondents. | Civil Action No. 25-cv-12094-IT |

## RESPONDENTS' OPPOSITION TO PETITIONER'S PETITION FOR HABEAS CORPUS UNDER 28 U.S.C. § 2241

Respondents Antone Moniz, Patricia Hyde, Todd M. Lyons, Kristi Noem, Pamela Bondi, and Donald J. Trump, in their official capacities, by and through their attorney, Leah B. Foley, United States Attorney for the District of Massachusetts, respectfully submit this opposition to Petitioner John Doe's ("Petitioner") Petition for Writ of Habeas Corpus ("Petition"). Doc. 1. Respondents respond to the Petition as contemplated by Rules 4 and 5 of the Federal Rules Governing Section 2254 cases.[1]

Petitioner, a native and citizen of Guatemala, was detained by federal immigration agents on July 4, 2025. Doc. 1, ¶¶ 2, 5, 6. Petitioner claims that his detention is unlawful because he has been detained "for a prolonged period of time without a bond hearing, based solely on unproven accusations, and without any finding that he actually presents a danger or flight risk", and because

---

[1] *See* Rule 1(b) ("The district court may apply any or all of these rules to a habeas corpus petition…"); *Vieira v. Moniz*, No. CV 19-12577-PBS, 2020 WL 488552, at *1 n.1 (D. Mass. Jan. 30, 2020) (evaluating the Government's response and dismissing habeas petition under Section 2254 Rules).

1

he has not received "any form of individualized process". Doc. 1, ¶¶ 56-57. In fact, Petitioner's detention is lawful under 8 U.S.C. § 1225(b) because he is an applicant for admission who is not "clearly and beyond a doubt entitled to be admitted" to the United States. Alternatively, Petitioner's detention is lawful under 8 U.S.C. § 1226(c)(1)(E)—the Laken Riley Act—because Petitioner was detained after being arrested for shoplifting by the Medford Police Department on July 4, 2025. *See* Declaration of John Charpentier, Acting Deputy Field Officer Director, U.S. Department of Homeland Security ("Decl."), filed herewith, at ¶ 12. Moreover, Petitioner has been provided with all process that is due to him as an applicant for admission, and his period of detention is presumptively reasonable under the Constitution.

Because Petitioner's detention is fully supported by statute, regulation, and the Constitution, the Petition should be denied.

**I.    BACKGROUND**

**A.    Petitioner's Immigration History**

Petitioner is a native and citizen of Guatemala. Decl. ¶ 6. He entered the United States on December 29, 2021, near Roma, Texas, at a place other than a port of entry and was not inspected or admitted by an immigration officer. Decl. ¶ 6. Petitioner presented to Customs and Border Patrol ("CBP") as an Unaccompanied Alien Child. Decl. ¶ 6.

On December 31, 2021, CBP served Petitioner with a Notice to Appear alleging he was inadmissible pursuant to 8 U.S.C. § 1182(a)(6)(A)(i). Decl. ¶ 7. He was placed in the custody of the Office of Refugee Resettlement ("ORR"). Decl. ¶ 7. On February 1, 2022, Petitioner was released from ORR's custody to a relative's custody. Decl. ¶ 8. He was released on an Order of Release on Recognizance. Decl. ¶ 8. On February 15, 2022, CBP filed the Notice to Appear with the immigration court. Decl. ¶ 9.

On December 11, 2024, an immigration judge terminated Petitioner's removal proceedings without prejudice.  Decl. ¶ 10.  Upon termination of proceedings, Petitioner was no longer subject to an Order of Release on Recognizance.  Decl. ¶ 10.

On December 19, 2024, Petitioner filed a Form I-360, Petition for Amerasian, Widower, or Special Immigrant with the U.S. Citizen and Immigration Services ("USCIS").  Decl. ¶ 11.  USCIS granted the Form I-360 on April 15, 2025.  Decl. ¶ 11.

On July 4, 2025, Petitioner was arrested by the Medford Police Department for shoplifting by concealing merchandise.  Decl. ¶ 12.  Petitioner posted bond out of Medford Police Department custody that same day.  Decl. ¶ 12.  Thereafter, on July 4, 2025, ICE encountered Petitioner in Medford, Massachusetts, interviewed him, ran his fingerprints to confirm his identity, and detained him pursuant to 8 U.S.C. § 1225(b).  Decl. ¶ 13.  ICE served Petitioner with a Form I-862 (Notice To Appear), a Form I-200 (Warrant for Arrest of Alien), and a Form I-286 (Notice of Custody Determination).  Decl. ¶ 14.

On July 7, 2025, the shoplifting charge was dismissed at the request of the Commonwealth of Massachusetts.  Decl. ¶ 15.

On July 16, 2025, Petitioner filed a motion for a custody redetermination hearing.  Decl. ¶ 16.  The immigration court scheduled the hearing for July 24, 2025 at 9 a.m.  Decl. ¶ 16.  On July 21, 2025, ICE cancelled the Form I-286 (Notice of Custody Determination) as it was issued in error because the Petitioner was not detained under 8 U.S.C. § 1226.  Decl. ¶ 17.  ICE also served Petitioner with a Form I-261 (Additional Charges of Inadmissibility/Deportability), alleging that he was also inadmissible pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I).  Decl. ¶ 17.

On July 24, 2025, the immigration judge concluded that Petitioner was statutorily ineligible for a custody redetermination hearing pursuant to 8 U.S.C. § 1226(c)(1)(E).[2] Decl. ¶ 19. On July 28, 2025, ICE re-served and filed the Notice to Appear with the immigration court. Decl. ¶ 22.

Petitioner is currently detained at the Plymouth County Correctional Facility in Plymouth, Massachusetts. Decl. ¶ 23.

### B.    Legal Background for Aliens Seeking Admission to the United States.

In exercising its plenary power over immigration, Congress delegated to the Secretary of Homeland Security the responsibility for "[s]ecuring the borders," enforcing the immigration laws, and "control[ling] and guard[ing] the boundaries and borders of the United States against the illegal entry of aliens." 6 U.S.C. §§ 202(2) & (3); 8 U.S.C. § 1103(a)(5).

Pursuant to 8 U.S.C. § 1225(a)(1), an alien present in the United States who has not been admitted is known as an applicant for admission. Per Section 1225(a)(3), all applicants for admission are subject to inspection by immigration officers to determine if they are admissible to the United States. The term "admission" is defined by the Immigration and Nationality Act ("INA") to mean "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A); *see also* 8 C.F.R. § 1235.1 (setting forth inspection procedures).

Section 1225(b)(1) provides for the inspection of aliens arriving in the United States for admission. And, relevant here, Section 1225(b)(2)(A) provides for the inspection of all "other" applicants for admission and states that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and

---

[2] Both parties reserved the right to appeal this decision to the Board of Immigration Appeals. Decl. ¶ 19.

beyond a doubt entitled to be admitted, the alien ***shall be detained*** for a proceeding under section 240."[3]  8 U.S.C. § 1225(b)(2)(A) (emphasis added).

## II.    ARGUMENT

### A.  Petitioner Is Properly Detained Under 8 U.S.C. § 1225(b)(2)(A)

Petitioner is properly detained under 8 U.S.C. § 1225(b)(2)(A) which mandates that he remain in detention during the pendency of his removal proceedings.  Pursuant to 8 U.S.C. § 1225(b)(2)(A), "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 240."  8 U.S.C. § 1225(b)(2)(A).

In the present case, Petitioner falls squarely within the ambit of Section 1225(b)(2)(A)'s mandatory detention requirement.  To start, Petitioner is an "applicant for admission" to the United States.  As described above, an "applicant for admission" is an alien present in the United States who has not been admitted.  8 U.S.C. § 1225(a)(1).  Petitioner here does not contend that he has been admitted.  *See generally* Doc. 1.  Next, because Petitioner has not demonstrated to an examining immigration officer that he is "clearly and beyond a doubt entitled to be admitted," his detention is mandatory.  8 U.S.C. § 1225(b)(2)(A); *see also Alvarenga Pena v. Hyde*, Civil Action No. 25-cv-11983-NMG, 2025 WL 2108913, at *1 (D. Mass. Jul. 28, 2025) ("Because petitioner remains an applicant for admission, his detention is authorized so long as he is not clearly and beyond doubt entitled to be admitted to the United States").  Indeed, Petitioner *cannot* demonstrate that he is "clearly and beyond a doubt entitled to be admitted" because, as he is present in the

---

[3] Section 240 of the INA, codified at 8 U.S.C. § 1229a, refers to the full removal proceedings that the Petitioner is currently subject to before the Immigration Court.

United States without being admitted or paroled, he is inadmissible per 8 U.S.C. § 1182(a)(6) and 8 U.S.C. § 1182(a)(7)(A)(i)(I). Thus, the Petitioner is properly detained pursuant to 8 U.S.C. § 1225(b)(2)(A), which mandates that he "shall be" detained.

This reasoning is supported by the Supreme Court. As explained in *Jennings v. Rodriguez*, 583 U.S. 281 (2018), applicants for admission fall into one of two categories: those covered by Section 1225(b)(1) and those covered by Section 1225(b)(2). 583 U.S. at 287. Section 1225(b)(1) applies to aliens arriving in the United States who are initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation. Section 1225(b)(1)(A)(i). Section 1225(b)(2), on the other hand, is "broader" and "serves as a catchall provision that applies to *all* applicants for admission not covered by 1225(b)(1) (with specific exceptions not relevant here)." *Jennings*, 583 U.S. at 837 (emphasis added). Put another way, while Section 1225(b)(1) applies to aliens "arriving" in the United States, Section 1225(b)(2) applies to all "other" aliens who are applicants for admission—like Petitioner. Simply put, an alien does not lose his "applicant for admission" status simply because he was inspected at a time other than his immediate arrival in the United States. Moreover, the Supreme Court has confirmed that this statutory mandate for detention extends for the entirety of removal proceedings. *See Jennings*, 583 U.S. at 302 ("[Section] 1225(b)(2) … mandates[s] detention of aliens *throughout the completion of applicable proceedings* and not just until the moment those proceedings begin." (emphasis added)).[4]

---

[4] The only means to obtain release for an applicant for admission is through parole. CBP and ICE have discretion to parole applicants for admission into the United States. *See* 8 U.S.C. § 1182(d)(5). For those detained under § 1225(b), regulations provide that ICE or CBP may grant parole if the alien is "neither a security risk nor a risk of absconding," and (1) has a serious medical condition; (2) is pregnant; (3) falls within certain categories of juveniles; (4) will be a witness; or (5) if continued detention is otherwise "not in the public interest." 8 C.F.R. § 212.5(b); *see also* 8 C.F.R. § 235.3(c).

This reasoning was also recently adopted by another session of this Court. *See Alvarenga Pena*, 2025 WL 2108913, at *1. In that case, Alvarenga Pena illegally entered the United States in 2005 and was subsequently placed in immigration proceedings that were terminated. *Id.* Approximately 20 years later, ICE encountered Alvarenga Pena following a traffic stop in 2025 and detained him under Section 1225(b)(2). *Id.* The Court stated that "[b]ecause petitioner remains an applicant for admission, his detention is authorized [under Section 1225(b)(2)(A)] so long as he is not clearly and beyond doubt entitled to be admitted to the United States." *Id.* at *2. Alvarenga Pena suggested that he was lawfully in the United States because he was the recipient of an approved I-130 petition, but the Court rejected that argument as "the approval of a visa petition does not, by itself, entitle an alien to permanent resident status." *Id.* (citing *Firstland Int'l, Inc. v. INS*, 377 F.3d 127, 132 n.6 (2d Cir. 2004)).[5] The Court went on to point out that not only was petitioner's detention authorized by Section 1225(b)(2)(A)—it was mandated by Section 1225(b)(2)(A). *Id.*

Respondents recognize that another session of this Court reached a different conclusion. *See Gomes v. Hyde*, No. 25-cv-11571-JEK, 2025 WL 1869299, at *1 (D. Mass. Jul. 7, 2025). Respectfully, however, this Court should decline to following the reasoning in *Gomes*. The Court in *Gomes* concluded that Section 1225(b) authorizes the government to detain aliens *seeking admission* to the country, *i.e.*, in the court's view, upon immediate arrival in the country, whereas Section 1226(a) authorizes the government to detain certain aliens *already in* the country. *Id.* The Court focused on the fact that Gomes had "resided in the country for over a year" at the time he

---

[5] Any argument by Petitioner here that he is lawfully in the United States because his Form I-360 was approved would fail for the same reason, as the approval of this petition, without more, does not confer lawful permanent resident status.

was arrested on a warrant issued pursuant to Section 1226. *Id.* at 5. But, by its plain language, Section 1225(b) does not apply just to aliens arriving in the United States. Again, while Section 1225(b)(1) concerns aliens "arriving" in the United States, Section 1225(b)(2) is a "catch-all" that applies to all "other" aliens who are applicants for admission. Simply put, the Court in *Gomes* read a temporal limitation into Section 1225(b) that is not supported by the text of the statute.

Moreover, to the extent Petitioner claims his detention falls under 8 U.S.C. § 1226(a) and is discretionary simply because he has been placed in full removal proceedings, his argument is belied by the language of Section 1225(b) itself, which states that the alien "shall be detained for a proceeding under ***section 1229a*** of this title." (emphasis added). Moreover, in *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), the Board of Immigration Appeals held that mandatory detention under 8 U.S.C. § 1225(b) applies to ***all*** "applicant[s] for admission," whether they are placed in expedited removal proceedings or in full removal proceedings under 8 U.S.C. § 1229a. *Id.* at 67-68; *see also Matter of M-S-*, 27 I&N Dec. 509 (A.G. 2019) (holding that aliens who are present in the United States without admission or parole and placed into expedited removal proceedings are detained under Section 1225 even if later placed into full removal proceedings).

Accordingly, because Petitioner is an applicant for admission who had not demonstrated "clearly" and "beyond doubt" that he is "entitled to be admitted", his detention is authorized—and mandated—by 18 U.S.C. § 1225(b)(2)(A).

### B. Petitioner Is Properly Detained Under 18 U.S.C. § 1226(c)(1)(E).

Should this Court find that Petitioner's detention is not authorized by Section 1225(b)(2)(A), it nonetheless is authorized by 8 U.S.C. § 1226(c)(1)(E). On January 29, 2025, the President signed into law the Laken Riley Act. *See* Laken Riley Act, S. 5, 119th Cong. (2025). Among other things, the Act amended 8 U.S.C. § 1226(c) to provide that the Attorney General

8

"***shall*** take into custody any alien who…(i) is inadmissible under paragraph 6(A), 6(C), or (7) of section 1182(a) of this title; and (ii) is charged with, ***is arrested for***, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, ***shoplifting***, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." 8 U.S.C. § 1226(c)(1)(E)(ii) (emphasis added). Petitioner falls squarely within the statute. Petitioner is inadmissible under section 1182(a), as described above, and he was arrested for shoplifting. Decl. ¶ 12. His detention is therefore mandatory under 8 U.S.C. § 1226(c). And, as described more fully below, his detention comports with the Constitution. *See also Demore v. Kim*, 538 U.S. 510, 511 (2003) (recognizing that detention during removal proceedings is a constitutionally permissible part of that process).

The fact that this charge was later dismissed does not change the analysis. The statute does not state that an alien should be released upon adjudication of the charges. *See generally* 8 U.S.C. § 1226(c)(1)(E)(ii). If anything, by specifically differentiating between those who are "charged", "arrested", and "convicted", the statute makes clear that being convicted of the charge is not a requirement for detention.

For these reasons, Petitioner is lawfully detained pursuant to 8 U.S.C. § 1226(c)(1)(E)(ii).

**C. Petitioner's Due Process Claim Is Without Merit.**

Petitioner claims that his current detention is violates the Due Process Clause of the Fifth Amendment. Doc. 1 ¶ 11. This argument fails. Petitioner is not entitled to a bond hearing because his detention is mandatory under 18 U.S.C. § 1225(b)(2)(A) or, alternatively, under 8 U.S.C. § 1226(c)(1)(E)(ii), and his period of detention is presumptively reasonable under the Constitution.

The Supreme Court has long recognized that Congress exercises "plenary power to make rules for the admission of foreign nationals and to exclude those who possess those characteristics

9

which Congress has forbidden." *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972). Pursuant to that longstanding doctrine, "an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative." *Landon v. Plasencia*, 459 U.S. 21, 32 (1982). The broad scope of the political branches' authority over immigration is "at its zenith at the international border." *United States v. Flores-Montano*, 541 U.S. 149, 152–53 (2004). Accordingly, "certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographical borders." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

The Supreme Court has explained that applicants for admission lack any constitutional due process rights with respect to admission aside from the rights provided by statute: "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned," *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953), and "it is not within the province of any court, unless expressly authorized by law, to review [that] determination". *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950). The Supreme Court reaffirmed "[its] century-old rule regarding the due process rights of an alien seeking initial entry" in *Department of Homeland Security v. Thuraissigiam*, explaining that an individual who illegally crosses the border—like Petitioner—is an applicant for admission and "has only those rights regarding admission that Congress has provided by statute." 591 U.S. 103, 139-40 (2020).

As explained by the Supreme Court, "[w]hen an alien arrives at a port of entry—for example, an international airport—the alien is on U.S. soil, but the alien is not considered to have entered the country …". *Thuraissigiam*, 591 U.S. at 139. Stated further, "aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'" *Id.* (quoting *Mezei*, 345 U.S. at 215). The

10

Court held that this same "threshold" rule applies to individuals, like Petitioner, who are apprehended after trying "to enter the country illegally" since by statute, such individuals are also defined as applicants for admission. *Id.* at 139-40. Treating such an individual in a more favorable manner than an individual arriving at a port of entry would "create a perverse incentive to enter at an unlawful rather than a lawful location" and therefore the Supreme Court rejected the argument that an individual who "succeeded in making it 25 yards into U.S. territory before he was caught" should be entitled to additional constitutional protections. *Id.* at 140.

Instead, applying the "century-old rule regarding the due process rights of an alien seeking initial entry[,]" the Court explained that aliens arrested after crossing the border illegally, such as Petitioner, have "only those rights regarding admission that Congress has provided by statute." *Id.* at 140. The Court was clear: "the Due Process Clause provides nothing more" than the procedural protections set forth in 8 U.S.C. § 1225 that allow an individual to seek protection from removal if he fears return to his home country and also seek parole from the agency. *Id.* The Supreme Court's decision in *Thuraissigiam* is instructive. In relevant part, *Thuraissigiam* concerned a due process challenge raised by an alien apprehended 25 yards from the border, which he crossed illegally. 591 U.S. at 139. DHS detained and processed him for expedited removal because he lacked valid entry documents. *Id.* at 114. An asylum officer then determined that Mr. Thuraissigiam lacked a credible fear of persecution. *Id*. Mr. Thuraissigiam petitioned for a writ of habeas corpus, asserting a fear of persecution and requesting another opportunity to apply for asylum. *Id.*

In its decision, the Supreme Court delineated the boundaries of due process claims that can be made by applicants for admission. Specifically, the Court held that for such aliens stopped at the border, "the decisions of executive or administrative officers, acting within powers expressly

11

conferred by Congress, are due process of law." *Id.* at 131 (citing *Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892)); *see also Guerrier v. Garland*, 18 F.4th 304, 313 (9th Cir. 2021) ("In concluding that Thuraissigiam's due process rights were not violated, the Supreme Court emphasized that the due process rights of noncitizens who have not 'effected an entry' into the country are coextensive with the statutory rights Congress provides.").

The U.S. Court of Appeals for the First Circuit also held that detention of an alien seeking admission to the United States does not violate due process in *Amanullah v. Nelson*, 811 F.2d 1, 9 (1st Cir. 1987). In that case, the Court explained that "the detention of the appellants is entirely incident to their attempted entry into the United States and their apparent failure to meet the criteria for admission—and so, entirely within the powers expressly conferred by Congress." *Id.* The appellants were detained pursuant to 8 U.S.C. § 1225(b) and the Court found no due process violation in the denial of their parole applications "pending the ultimate (seasonable) resolution of the exclusion/asylum proceedings" as there was "no suggestion of unwarranted governmental footdragging in these cases" and because "prompt attention appears to have been paid to the administrative aspects of exclusion and asylum." *Id.*

This Court should apply the "century-old rule" reaffirmed in *Thuraissigiam* and conclude that Petitioner's due process rights are coextensive with the rights provided him under statute. Here, the law provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 240." 8 U.S.C. § 1225(b)(2)(A). 8 U.S.C. § 1226(c)(1)(E)(ii), for its part, likewise requires mandatory detention for those arrested for shoplifting, like Petitioner. For the reasons set forth above, the Petitioner is subject to mandatory detention under either statute.

Moreover, mandatory detention is warranted under 8 U.S.C. § 1229a whether the Petitioner remains in ongoing removal proceedings or is later processed for expedited removal. *See Matter of Q. Li*, 29 I&N Dec. 66, 67 ("'in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 240.'" (emphasis added) (quoting 8 U.S.C. § 1235(b)(2)(A)). ICE's decision to place an alien arriving in the United States in either expedited removal proceedings under 8 U.S.C. § 1225(b)(1), or full removal proceedings 8 U.S.C. § 1229a, is discretionary. However, ICE's decision to detain or release aliens deemed applicants for admission is not. "For those placed in expedited removal proceedings who are referred to an Immigration Judge for consideration of their asylum application. . . 8 U.S.C. § 1225(b)(1)(B)(ii), requires detention until the final adjudication of the asylum application." *Q. Li*, 29 I&N Dec. at 68 (citing *Matter of M-S-*, 27 I&N Dec. 509, 516 (A.G. 2019)). "Likewise, for aliens arriving in and seeking admission into the United States who are placed directly in full removal proceedings, section . . . 8 U.S.C. § 1225(b)(2)(A), mandates detention 'until removal proceedings have concluded.'" *Q. Li*, 29 I&N Dec. at 68 (quoting *Jennings*, 583 U.S. at 299). Thus, even if the Court was not barred from reviewing Petitioner's claim under 8 U.S.C. § 1252(a)(2)(A), his claim that his current detention is "without cause" and "in violation of his constitutional rights to due process of law" is without merit and should be dismissed.

Finally, Respondents recognize that the due process clause prohibits unduly prolonged detention of an alien. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). That said, some period of detention is constitutionally valid, *see Demore v. Kim*, 538 U.S. 510, 511 (2003), and an alien's detention presumptively comports with due process rights if it does not exceed six months.

*Zadvydas*, 533 U.S. at 701. Here, Petitioner has been detained only for 26 days, far short of the six-month period that is presumptively constitutional. *Id.* And, as noted by the Court in *Alvarenga Pena*, courts have "routinely upheld longer periods of detention." *Alvarenga Pena*, 2025 WL 2108913, at *3 (citing *Reid v. Donelan*, 17 F.4h 1, 12 (1st Cir. 2021)).

For all these reasons, Petitioner's due process claim should be denied.

### III. CONCLUSION

For the reasons described above, this Court should dismiss the Petition.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By:   */s/ Nicole M. O'Connor*
Nicole M. O'Connor
Assistant United States Attorney
United States Attorney's Office
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3112
nicole.o'connor@usdoj.gov

Date: July 30, 2025

## CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to any non-registered participants via first class mail.

                                              */s/ Nicole M. O'Connor*
                                              NICOLE M. O'CONNOR
                                              Assistant U.S. Attorney

Dated:  July 30, 2025