UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOHN DOE,[1]     *
         *
  Petitioner,   *
         *
  v.      *   Civil Action No. 1:25-cv-12094-IT
         *
ANTONE MONIZ, Superintendent, Plymouth *
County Correctional Facility, et al.,  *
         *
  Respondents.   *

MEMORANDUM & ORDER

September 5, 2025

TALWANI, D.J.

  Petitioner John Doe's <u>Petition for Writ of Habeas Corpus</u> [Doc. No. 1] asserts that his detention without a bond hearing by Immigration and Customs Enforcement ("ICE") violates his Due Process rights. The court granted the Petition at a hearing on September 3, 2025, and ordered ICE to conduct a bond hearing by September 10, 2025, with this written decision to follow. The Petition is GRANTED for the reasons set forth below.

## I. Statutory Background[2]

### A. Sections 1225 and 1226

  "Two statutes principally govern the detention of noncitizens pending removal proceedings: 8 U.S.C. §§ 1225 and 1226." <u>Gomes v. Hyde</u>, 2025 WL 1869299, at *2 (D. Mass. July 7, 2025) (footnotes omitted). As relevant here, Section 1225 provides for inspection of "[a]ll

---

[1] Petitioner is proceeding under a pseudonym with leave of court. <u>See</u> Order [Doc. No. 18].

[2] The court begins with a brief discussion of relevant statutory provisions to provide context for the documents and other events set forth in the Factual Background section. These statutory provisions are discussed in greater detail in the Discussion section below.

aliens . . . who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States[,]" 8 U.S.C. § 1225(a)(3), where an "applicant for admission" is defined as "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . ." id. § 1225(a)(1). Subject to exclusions not applicable here, detention is mandatory under Section 1225,

> in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

Id. § 1225(b)(2)(A). In other words, three conditions trigger Section 1225's mandatory detention provision: "an 'examining immigration officer' must determine that the individual is: (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) 'not clearly and beyond a doubt entitled to be admitted.'" Martinez v. Hyde, __ F. Supp. 3d __, 2025 WL 2084238, at *2 (D. Mass. July 24, 2025). The Supreme Court has framed Section 1225 as related to a "process of decision [that] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." Jennings v. Rodriguez, 583 U.S. 281, 287 (2018).

Section 236 of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1226, on the other hand, "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings[.]" Id. at 289. As discussed further below, Section 1226(a) provides for discretionary detention while Section 1226(c) provides for mandatory detention.

### B. Special Immigrant Juvenile Status

A Special Immigrant Juvenile ("SIJ") is defined as "an immigrant who is present in the United States" and:

(i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;

(ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and

(iii) in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status . . . .

8 U.S.C. § 1101(a)(27)(J).

## II.    Factual Background

### A.  Petitioner's Background

Petitioner is a native and citizen of Guatemala, Decl. of John Charpentier ISO Opp. ("Charpentier Decl.") ¶ 6 [Doc. No. 22], who resides in Massachusetts, Decl. of Isaac Dinallo ISO Pet. ("Dinallo Decl.") ¶ 2 [Doc. No. 31]. He is 18 years old, has never been convicted of any crime, and has no pending charges. Decl. of Julian Bava ISO Pet. ("Bava Decl."), Ex. A (EARM printout) [Doc. No. 32-1].

### B.  Initial Immigration Processing

Petitioner "entered the United States on December 29, 2021, near Roma, Texas, at a place other than a port of entry and was not inspected or admitted by an immigration officer. [He] presented as an Unaccompanied Alien Child to Customs and Border Patrol[.]" Charpentier Decl. ¶ 6 [Doc. No. 22].

Petitioner's first immigration proceedings commenced the next day. On December 30, 2021, Customs and Border Patrol ("CBP") issued him a Notice to Appear in removal proceedings alleging he was inadmissible pursuant to 8 U.S.C. § 1182(a)(6)(A)(i).[3] Id. ¶ 7. On

---

[3] Section 1182(a)(6) concerns "[i]llegal entrants and immigration violators." Subsection

the Notice to Appear, the box charging "You are an alien present in the United States" was checked; the boxes for "an arriving alien" and "admitted to the United States, but [] removable for the reasons stated below" were left blank. Bava Decl., Ex. C (Notice to Appear) 1 [Doc. No. 32-3]. Petitioner was detained pursuant to a Warrant for Arrest of Alien, id., Ex. E [Doc. No. 32-5], and a Notice of Custody Determination, id., Ex. D [Doc. No. 32-4], both of which identified the detention authority as "section 236 of the Immigration and Nationality Act."

### C. Release and SIJ Status

On February 1, 2022, Petitioner was released to a relative's custody on an Order of Release on Recognizance. Charpentier Decl. ¶ 8 [Doc. No. 22]; Bava Decl., Ex. B (Verification of Release) [Doc. No. 32-2]. On February 15, 2022, Petitioner was notified of a new court location and that his original Notice to Appear had been filed with the Office of the Immigration Judge in Boston. See Bava Decl., Ex. F (Notice of New Court Location) [Doc. No. 32-6].

On December 11, 2024, an immigration judge terminated Petitioner's removal proceedings without prejudice, and Petitioner "was no longer subject to an Order of Release on Recognizance." Charpentier Decl. ¶ 10 [Doc. No. 22].

On December 19, 2024, Petitioner filed a Form I-360 for Special Immigrant status with U.S. Citizen and Immigration Services ("USCIS"), which was granted in April 2025. Id. ¶ 11; Bava Decl., Ex. G (Notice of Action) [Doc. No. 32-7].

---

1182(a)(6)(A)(i) provides that "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible."

### D. Shoplifting Arrest

On July 4, 2025, Petitioner was arrested by a Medford Police Officer "for shoplifting by concealing merchandise." Charpentier Decl. ¶ 12 [Doc. No. 22]. Despite the arrest, there is no evidence in the record that Petitioner has been charged with a crime.[4]

On July 16, 2025, twelve days after Petitioner was detained by ICE, Medford Police Officer Patrick Smith filed an Application for Criminal Complaint against Petitioner with the Somerville District Court for an offense that purportedly occurred on June 29, 2025. See Pet. Resp. to Court Order [Doc. No. 47]; Dinallo Decl., Ex. 1 (Notice of Clerk Magistrate's Hearing)

---

[4] In Massachusetts, a criminal proceeding is commenced by a complaint issued by a judicial officer or by an indictment by a grand jury. See Mass. R. Crim. P. 3(a). Respondents' pleadings suggest that a charge was filed and then dismissed, but this suggestion is not supported by the record before the court. First, while the Form I-213, Record of Deportable/Inadmissible Alien, states that Petitioner "was released after posting bond out of Medford Police Department," see Bava Decl., Ex. A at 2 [Doc. No. 32-1] (I-213 Narrative created July 4, 2025) (emphasis added); see also Supp. Charpentier Decl., Ex. 2 at 2 [Doc. No. 53-2] (same), Respondents concede that this assertion is not based on the direct knowledge of the declarants before the court, see Supp. Charpentier Decl. ¶ 7 [Doc. No. 53]. Petitioner's counsel surmises that Petitioner was likely "released by the Medford police . . . rather than bonded out, because [Petitioner's counsel] would have otherwise been the ones to post bond for him." Dinallo Decl. ¶¶ 6–8 [Doc. No. 31]. And although Respondents assert that, three days after the arrest, a "shoplifting by concealing merchandise charge" "was dismissed at the request of the Commonwealth of Massachusetts[,]" Charpentier Decl. ¶ 15 [Doc. No. 22], the declarant again has no direct knowledge of that information, see Supp. Charpentier Decl. ¶ 9 [Doc. No. 53] (citing NNSV Query Result, Ex. 1 [Doc. No. 53-1]. The NNSV Query Result states that the "Arresting Agency" was "Medford PD" and that the charge, "Shoplifting by Concealing Mdse," was "Dismissed – Request of Commonwealth," Supp. Charpentier Decl., Ex. 1 at 3 [Doc. No. 53-1], but does not identify the entity that purportedly brought this charge or who within the Commonwealth requested the dismissal. No records of a charge being filed against Petitioner have been located. See Decl. of Nicole Dill ISO Pet. ("Dill Decl.") ¶¶ 8–10 [Doc. No. 33]. The parties agree that there are no pending charges from this arrest. See Charpentier Decl. ¶ 15 [Doc. No. 22]; Pet.'s Mem. 5 [Doc. No. 27].

[Doc. No. 31-1]. A Clerk Magistrate's Hearing on the Application has been noticed for

September 9, 2025. Dinallo Decl., Ex. 1 [Doc. No. 31-1].[5]

### E.  Current Immigration Detention and Proceedings

The same day Petitioner was arrested by Medford Police, he was released from police

custody and detained by ICE. Charpentier Decl. ¶ 13 [Doc. No. 22]; see also Dinallo Decl. ¶ 6

[Doc. No. 31] (detailing observation of Doe being escorted from the Medford Police Station to

an unmarked van by ICE agents). ICE briefly interviewed Petitioner and ran his fingerprints to

confirm his identity. Charpentier Decl. ¶ 13 [Doc. No. 22]. A Warrant for Arrest of Alien [Doc.

No. 53-4], dated July 4, 2025, was issued and served on Petitioner later that day in Burlington.

The Notice of Custody Determination [Doc. No. 53-5] dated the same day at 5:16 p.m. states that

Petitioner was being detained "[p]ursuant to the authority contained in section 236 of the

Immigration and Nationality Act."

On July 16, 2025, Petitioner moved for a custody redetermination hearing, or "bond

hearing," see Pet.'s Mem. 2–3 [Doc. No. 27] (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d)), which

the immigration court scheduled for July 24, 2025. Charpentier Decl. ¶ 16 [Doc. No. 22].

ICE reports that on July 21, 2025, it "cancelled" the Form I-286, Notice of Custody

Determination that was issued on July 4, 2025. Charpentier Decl. ¶ 17 [Doc. No. 22]; see Supp.

Charpentier Decl., Ex. 6 [Doc. No. 53-6] (Notice of Custody Determination crossed out with

"Cancelled" written across it). Respondents do not contend that Petitioner was provided notice of

---

[5] The clerk-magistrate hearing's "legal function is to determine whether there is probable cause
to issue criminal process against the accused." Eagle-Trib. Pub. Co. v. Clerk-Magistrate of
Lawrence Div. of Dist. Ct. Dep't, 448 Mass. 647, 650, 863 N.E.2d 517 (2007) (citing M.G.L. c.
218, § 35A). But "[t]he implicit purpose of the [§] 35A hearings is to enable the [clerk-
magistrate] to screen a variety of minor criminal or potentially criminal matters out of the
criminal justice system[.]" Id. (internal citations omitted).

this cancellation, but assert here that the July 4, 2025, Notice of Custody Determination "was issued in error because [Petitioner] is not detained under 8 U.S.C. § 1226[,]" Charpentier Decl. ¶ 17 [Doc. No. 22]. Respondents do not claim that any substitute or amended document was served on Petitioner stating the basis for his detention. ICE also served Petitioner by mail with a Form I-261, Additional Charges of Inadmissibility/Deportability [Doc. No-53-7], alleging that he is also inadmissible pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I).[6]

On July 24, 2025, ICE argued to an immigration judge that Petitioner is ineligible for a custody redetermination hearing because he is detained under Section 1225(b); ICE argued alternatively that if the immigration judge found Petitioner was detained under Section 1226, he remains subject to mandatory custody under Section 1226(c)(1)(E). Charpentier Decl. ¶ 18 [Doc. No. 22]. Petitioner submitted letters in support from community members, including several letters noting that he has been volunteering at a local food pantry. See Bava Decl., Ex. I at ECF pp. 3, 5, 7, 9 [Doc. No. 32-9]. The immigration judge determined that Petitioner "is statutorily ineligible for IJ custody reetermination per the Laken Riley Act [Section 1226(c)(1)(E)]." Dill Decl., Ex. A (Immigration Judge Order) [Doc. No. 33-1]; Charpentier Decl. ¶ 19 [Doc. No. 22].

The same day, Petitioner filed his Petition [Doc. No. 1] with this court. Petitioner is currently detained at the Plymouth County Correctional Facility in Massachusetts. Charpentier Decl. ¶ 23 [Doc. No. 22].

On July 28, 2025, ICE served and filed a new Notice to Appear, dated July 22, 2025, with the immigration court. Id. ¶ 22. As before, on the Notice to Appear [Doc. No. 33-2] in removal

---

[6] Subsection 1182(a)(7)(A)(i)(I) concerns a non-immigrant, who at the time of application for admission, "is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or [required] document of identity and nationality[.]"

proceedings, the box charging "You are an alien present in the United States" was checked, while the boxes for "an arriving alien" and "admitted to the United States, but [] removable for the reasons stated below" were both left blank. Id. at 1. This new Notice to Appear charges Petitioner's removability based on 8 U.S.C. §§ 1182(a)(6)(A)(i) and (a)(7)(A)(i)(I). Id. at 1.

## III.   Discussion

Petitioner argues that holding him "for a prolonged period of time without a bond hearing, based solely on unproven accusations, and without any finding that he actually presents a danger or flight risk[,] . . . [and] absent any form of individualized process violates the Due Process Clause of the Fifth Amendment to the United States Constitution." Pet. ¶¶ 56-57 [Doc. No. 1]. Respondents contend that he is lawfully detained without a bond hearing and that he has been provided all process due to him. Opp. 2 [Doc. No. 21]. The court considers first whether Petitioner was detained pursuant to Section 1225 or Section 1226. Finding that his detention is pursuant to Section 1226, the court considers next whether his detention falls within the discretionary detention provision under Section 1226(a) or the mandatory detention provision under Section 1226(c). Finally, the court considers whether detention violates Petitioner's Due Process rights.

### A.  Section 1225

Respondents' argument that Section 1225's detention provisions apply is a nonstarter because nothing in the record indicates that Section 1225 was the basis for Petitioner's detention. Respondents' argument also cannot be squared with the relevant statutory provisions.

Respondents do not dispute that when DHS first detained Petitioner in December 2021, the detention was pursuant to Section 1226. The Warrant for Arrest of Alien issued on December 30, 2021, found Petitioner "liable to being taken into custody as authorized by section 236 of the

Immigration and Nationality Act." Bava Decl., Ex. E [Doc. No. 32-5]. That same day, DHS issued a Notice of Custody Determination detaining Petitioner "[p]ursuant to the authority contained in section 236 of the Immigration and Nationality Act." Bava Decl., Ex. D [Doc. No. 32-4].

Respondents contend that, beginning on July 4, 2025, Petitioner was "detained . . . pursuant to 8 U.S.C. § 1225(b)." Charpentier Decl. ¶ 13 [Doc. No. 22]. But this assertion is contradicted by the Notice of Custody Determination [Doc. No. 53-5] which identifies "section 236" of the INA, i.e., 8 U.S.C. § 1226, as the authority under which Petitioner was detained. And although ICE asserts that it "cancelled the Form I-286, Notice of Custody Determination," on July 21, 2025, on the ground that "it was issued in error because the Petitioner is not detained under 8 U.S.C. § 1226[,]" Charpentier Decl. ¶ 17 [Doc. No. 22]; see Supp. Charpentier Decl., Ex. 6 [Doc. No. 53-6] (canceled Form I-286), no documents establishing that Petitioner was detained pursuant to Section 1225 have been issued in its stead. Nor does the Supplemental Charpentier Declaration provide any justification for re-classifying Petitioner's detention. See Supp. Charpentier Decl. ¶ 10 [Doc. No. 53]. Moreover, on Petitioner's motion for a custody redetermination hearing before an immigration judge, and on ICE's argument for detention in the alternative under either Section 1225(b) or Section 1226(c)(1)(E), Charpentier Decl. ¶¶ 16, 18 [Doc. No. 22], the immigration judge determined: "The Respondent is statutorily ineligible for IJ custody redetermination per the Laken Riley Act[,]" Dill Decl., Ex. A [Doc. No. 33-1], which is codified at Section 1226(c)(1)(E). The immigration judge's order did not mention Section 1225.

The court therefore discerns no basis in the record from which to find that Petitioner was in fact detained pursuant to Section 1225. Cf. Martinez, 2025 WL 2084238, at *4 (noting

government's "theory of the procedural history cannot be squared with the facts" where

petitioner's Order of Release on Recognizance was premised on Section 1226).

In any event, as other sessions of this court have found, "[w]hereas Section 1225(b)

'authorizes the Government to detain certain aliens <u>seeking admission into the country</u>,' Section

1226 'authorizes the Government to detain certain aliens <u>already in the country</u> pending the

outcome of removal proceedings.'" <u>Gomes</u>, 2025 WL 1869299, at *2 (quoting <u>Jennings</u>, 583

U.S. at 289) (emphasis added in <u>Gomes</u>); <u>see also</u> <u>Martinez</u>, 2025 WL 2084238, at *3

(distinguishing Section 1225 from Section 1226, which "governs a separate . . . detention scheme

applicable when an individual is 'already in the country[]'"); <u>Romero v. Hyde</u>, __ F. Supp. 3d

__, 2025 WL 2403827, at *9 (D. Mass. Aug. 19, 2025) ("seeking admission" refers to present-

tense action, and contrary reading of the term as synonymous with "applicant for admission"

"would require DHS to take into custody foreign nationals applying to enter the United States at

embassies abroad until their visa applications are resolved"). Courts in other jurisdictions have

reached the same conclusion. <u>See, e.g.</u>, <u>Rodriguez v. Bostock</u>, 779 F. Supp. 3d 1239, 1255–61

(W.D. Wash. 2025) (finding likelihood of success on argument that Section 1226, not Section

1225, governs nonresidents residing in the United States who previously entered without

inspection); <u>Lopez Benitez v. Francis</u>, __ F. Supp. 3d __, 2025 WL 2371588, at *9 (S.D.N.Y.

Aug. 13, 2025) (finding Section 1225 did not apply to petitioner who had been residing in the

United States for two years and not "seeking admission" at the time of his detention); <u>Maldonado</u>

<u>v. Olson</u>, __ F. Supp. 3d __, 2025 WL 2374411, at *11 (D. Minn. Aug. 15, 2025) (reaching same

conclusion after examining "longstanding practice of the government[,]" citing <u>Loper Bright</u>

<u>Enter. v. Raimondo</u>, 603 U.S. 369, 386 (2024)); <u>see also</u> <u>Loper Bright Enter.</u>, 603 U.S. at 386

(the "longstanding 'practice of the government' . . . can inform [a court's] determination of 'what the law is'").[7]

There is no dispute that Petitioner had been released and was residing in Massachusetts from February 2022 to the present, that his removal proceedings were terminated in December 2024, and that his application for SIJ status was approved in April 2025. In other words, there is no dispute that he had been residing in the United States for some time and was not "seeking admission" when ICE detained him in July 2025. As such, Section 1225 does not apply to Petitioner.

Accordingly, the court finds that Petitioner's detention is not subject to Section 1225.

### B. Section 1226

#### 1. Subsections 1226(a) and 1226(c)

Under 8 U.S.C. § 1226(a), "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States[,]" with certain conditions for release or conditional parole. "[T]he Due Process clause of the Fifth Amendment entitles a noncitizen detained pursuant to section 1226(a) to a bond hearing at which the government bears the burden of proving by clear and convincing evidence that the noncitizen is dangerous or a flight risk." Hernandez-Lara v. Lyons, 10 F.4th 19, 27, 41 (1st Cir. 2021); see also 8 C.F.R. §§ 1003.19(a), 1236.1(d).

Section 1226(c) provides, however, that detention is mandatory for certain nonresidents. Prior to a recent amendment, section 1226(c) provided that DHS "shall take into custody"

---

[7] Respondents point to one decision finding a nonresident was properly detained under Section 1225 where he entered illegally in 2005, removal proceedings against him were terminated in 2024, and ICE detained him in 2025. See Pena v. Hyde, 2025 WL 2108913, at *1 (D. Mass. July 28, 2025). But the petitioner there did not argue that his detention should have been under Section 1226 and the decision does not discuss Section 1226 at all.

nonresidents who "hav[e] committed" certain enumerated offenses, see 8 U.S.C. § 1226(c)(1)(A)–(B), have "been sentence[d] to a term of imprisonment for at least 1 year" for certain enumerated offenses, id. § 1226(c)(1)(C), or who are members or participants in terrorist activities or organizations, id. § 1226(c)(1)(D). In such cases, the Supreme Court has found that detention without a bond hearing is justified "for the brief period necessary for [the nonresident's] removal proceedings." Demore v. Kim, 538 U.S. 510, 513 (2003).

As relevant here, the Laken Riley Act, Pub. L. 119-1, 139 Stat. 3 (2025), added a new subparagraph, 8 U.S.C. § 1226(c)(1)(E), that makes detention mandatory for nonresidents who satisfy two conditions. First, the nonresident must be "inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title[.]" 8 U.S.C. § 1226(c)(1)(E)(i).[8] Second, the nonresident must "[be] charged with, . . . [be] arrested for, . . . [be] convicted of, admit[] having committed, or admit[] committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or" certain violent offenses not at issue here. 8 U.S.C. § 1226(c)(1)(E)(ii). Under the Laken Riley Act, detention is mandatory even if a nonresident has not been convicted of the enumerated offenses, so long as he has been arrested for one of them.

Respondents argue that Petitioner is subject to mandatory detention under the Laken Riley Act because he was arrested for shoplifting. Petitioner challenges his mandatory detention under the Laken Riley Act on two grounds: a statutory exclusion based on his SIJ status, and an as-applied due process challenge.

---

[8] Those grounds of inadmissibility are, generally: "presen[ce] in the United States without being admitted or paroled," 8 U.S.C. § 1182(a)(6)(A)(i); "seek[ing] to procure . . . a visa, or other documentation, or admission into the United States" by fraud or misrepresentation, id. § 1182(a)(6)(C)(i); and failure to possess "a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter," id. § 1182(a)(7)(A)(i)(I).

### 2.    Statutory Exclusion for SIJ Status

Petitioner argues that he is excluded from Section 1226(c)(1)(E) by way of his SIJ status.

Section 1226(c)(1)(E) is triggered by two conditions as relevant here: inadmissibility and an

arrest for shoplifting. The Notice to Appear that initiated proceedings against Petitioner in

immigration court identified only two of the three grounds of inadmissibility: 8 U.S.C.

§ 1182(a)(6)(A)(i) (presence without admission or parole) and § 1182(a)(7)(A)(i)(I) (lacking

valid documents at the time of application for admission). See Dill Decl., Ex. B at 4 [Doc. No.

33-2]. But Petitioner argues that a separate provision, 8 U.S.C. § 1255(h)(2), expressly exempts

individuals with SIJ status from those inadmissibility criteria.

Section 1255 concerns the adjustment of status of nonimmigrants. The statute provides in

relevant part:

> (a) The status of an alien who was inspected and admitted or paroled into the United
> States . . . may be adjusted by the Attorney General . . . to that of an alien
> lawfully admitted for permanent residence . . . .
>
> (h)  In applying this section to a special immigrant described in section
> 1101(a)(27)(J) of this title [i.e. an SIJ]—
>> (1) such an immigrant shall be deemed, for purposes of subsection (a), to
>> have been paroled into the United States; and
>> (2) in determining the alien's admissibility as an immigrant—
>>> (A) paragraphs . . . (6)(A), . . . [and] (7)(A), . . . of section 1182(a)
>>> of this title shall not apply . . . .

8 U.S.C. § 1255.

As Respondents point out, the exclusion in subsection (h)(2) is bracketed by the prefatory

language, "In applying this section[,]" which governs the adjudication of noncitizens'

applications for adjustment of status to lawful permanent resident—not their adjustment of status

or removability writ large. Reply 2 [Doc. No. 37]. The Third Circuit has addressed a similar

argument about the scope of this exclusion as it pertains to an individual with SIJ status, and

found that "the plain language demonstrates that Petitioner is removable despite his SIJS[.]" Cortez-Amador v. Att'y Gen., 66 F.4th 429, 433 (3d Cir. 2023); see also id. at 433 n.7 ("the text of 8 U.S.C. § 1255(b) is unambiguous").

Petitioner argues Cortez-Amador is inapposite because of its posture: the decision preceded the Laken Riley Act and involved "questions of ultimate removability following the completion of full removal proceedings." Pet.'s Mem. 2 [Doc. No. 40]. But all the Laken Riley Act adds here is that it incorporates the inadmissibility criteria of 8 U.S.C. § 1182(6)(A) (presence without being admitted or paroled), (6)(C) (fraud or misrepresentation), and (7) (lack of valid documents). See 8 U.S.C. § 1226(c)(1)(E)(i). "The threshold determination in" Cortez-Amador is therefore on point here: "whether a SIJS recipient is subject to removal simply for presence in the United States 'without being admitted or paroled.'" Cortez-Amador, 66 F.4th at 432 & n.5 (quoting 8 U.S.C. § 1182(a)(6)(A)(i)).

Petitioner also challenges the reasoning of Cortez-Amador because it found that a reading of subsection 1255(h)(2) to apply generally to removability would render superfluous the more narrow phrase in subsection 1255(h)(1), that a special immigrant shall be deemed paroled "for purposes of subsection (a)"—and the limiting phrase of subsection 1255(h)(1) is not present in subsection 1255(h)(2). Pet.'s Mem. 2 [Doc. No. 40]. But Petitioner's argument still does not address the limiting phrase that frames both subsections (h)(1) and (h)(2) in terms of adjudicating applications for the adjustment of status: "In applying this section . . ." 8 U.S.C. § 1255(h).

Finally, Petitioner marshals another Third Circuit case in his support: Osorio-Martinez v. Att'y Gen. U.S., 893 F.3d 153 (3d Cir. 2018). But as Petitioner admits, that case was on review of a denial of a preliminary injunction, see id. at 161, and thus the Third Circuit only "held that [SIJS recipients] are likely exempt from expedited removal." Pet.'s Mem. 3 [Doc. No. 40]

(emphasis added). And as the Cortez-Amador court noted, Osorio-Martinez "is distinguishable because the Court did not hold SIJS recipients are exempt from removal due to inadmissibility, but only that Congress intended to provide SIJS recipients with an opportunity to pursue adjustment of status." Cortez-Amador, 66 F.4th at 433 n.12. Osorio-Martinez would be persuasive authority if the government was seeking to remove Petitioner on an expedited basis. The case, however, does not address the question of detention under the Laken Riley Act, and is thus unavailing for Petitioner.

Had Congress considered the impact of the Laken Riley Act on SIJ status recipients, it may well have carved out mandatory detention for juveniles. But nothing in the statutory language or the legislative history suggests that Congress considered the question. Accordingly, the court finds that 8 U.S.C. § 1255(h)(2), which governs applications for adjustment of status, does not exempt Petitioner from removability based on his SIJ status.

### 3.    Constitutional Due Process

That leaves Petitioner's due process argument that he is entitled to a bond hearing despite his detention under 8 U.S.C. § 1226(c)(1)(E)(ii).

### a)    Due Process for Nonresidents Seeking Initial Admission

Respondents argue that Petitioner "is not entitled to a bond hearing because his detention is mandatory . . . under [Section] 1226(c)(1)(E)(ii), and his period of detention is presumptively reasonable under the Constitution." Opp. 9 [Doc. No. 21].[9] Respondents quote various cases holding that "an alien seeking initial admission to the United States requests a privilege and has

---

[9] Respondents make a fleeting suggestion that the court may be barred from reviewing the Petition under 8 U.S.C. § 1252(a)(2)(A), see Opp. 13 [Doc. No. 21], which bars judicial review relating to detention under 8 U.S.C. § 1225(b)(1). But that section concerns inspection of nonresidents, determinations of inadmissibility, and referral of claims for asylum, not detention.

no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative[,]" Landon v. Plasencia, 459 U.S. 21, 32 (1982), and that "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned," Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 212 (1953) (internal quotation marks and citation omitted). See Opp. 10 [Doc. No. 21]. Such doctrines, however, apply to those "seeking initial admission to the United States." Landon, 459 U.S. at 32. The sentence quoted from Shaughnessy above is clarified by the sentences immediately preceding it: "It is true that aliens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law. . . . But an alien on the threshold of initial entry stands on a different footing[.]" Shaughnessy, 345 U.S. at 212; see also Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[o]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent").

The other due process cases on which Respondents rely are predicated on detention under Section 1225(b). See, e.g., DHS v. Thuraissigiam, 591 U.S. 103, 118–19 (2020) ("[i]t is not disputed that [petitioner] was apprehended in the very act of attempting to enter this country; . . . and that . . . his case qualifies for the expedited review process, including '[m]andatory detention'" under Section 1225(b)); Amanullah v. Nelson, 811 F.2d 1, 9 (1st Cir. 1987) ("the detention of the appellants is entirely incident to their attempted entry into the United States" and they "were lawfully detained pursuant to 8 U.S.C. § 1225(b) in the first instance and lawfully held thereafter"); Matter of Q. Li, 29 I. & N. Dec. 66, 68 (BIA 2025) ("aliens arriving in the United States who are detained under [Section 1225](b)(1) or (b)(2) are ineligible for release on

bond"). For the reasons explained above, Petitioner was not, and should not have been, detained under Section 1225(b), and so these cases are unavailing.

To the extent Respondents argue that <u>Thuraissigiam</u>'s holding extends more generally to individuals not literally standing at the border seeking admission because it concerned a nonresident who had already crossed into U.S. territory, it is inapposite because the petitioner there "was stopped just 25 yards after crossing the southern border" and the Court held that "an alien who is detained shortly after unlawful entry cannot be said to have 'effected an entry,'" but instead "is 'on the threshold.'" <u>Thuraissigiam</u>, 591 U.S. at 103, 140. Petitioner has been residing in the United States since his release from immigration custody in February 2022, has not been subject to an Order of Release on Recognizance since December 2024, and has had SIJ status since April 2025. His current detention was not effected shortly after unlawful entry and he cannot be said to be "on the threshold."

### b) Due Process for Nonresidents Convicted of Crimes

The only due process case Respondents cite as to nonresidents already in the United States are <u>Demore</u>, 538 U.S. 510, and <u>Zadvydas</u>, 533 U.S. 678. Both cases addressed mandatory detention after a non-resident had been convicted of certain crimes. Neither case justifies detention without due process for an individual who has not been convicted of a crime.

When the Supreme Court considered Section 1226(c) prior to the Laken Riley Act amendment, it found the Section "mandate[d] detention during removal proceedings for a limited class of deportable aliens—including those convicted of an aggravated felony." <u>Demore</u>, 538 U.S. at 517–18. And critically, in <u>Demore</u>, the habeas petitioner "[did] not dispute the validity of his prior convictions, which were obtained following the full procedural protections our criminal justice system offers." 538 U.S. at 513. The Supreme Court held that the detention of "a criminal

alien who has conceded that he is deportable, for the limited period of [the detainee's] removal proceedings"[10] did not violate due process because such detention "serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." Id. at 528, 531. The Court underscored the legislative findings supporting Section 1226(c)—prior to the Laken Riley Act's amendments to that section—of the need to detain "deportable criminal aliens" based on statistics suggesting their likelihood of not appearing for removal hearings and their likelihood of subsequent arrests before deportation proceedings began. See id. at 518–21. As the First Circuit has explained, Demore upheld the constitutionality of a mandatory detention procedure as "applie[d] to a class of noncitizens who had already been convicted (beyond a reasonable doubt) of committing certain serious crimes." Hernandez-Lara, 10 F.4th at 35 (emphasis added).

Respondents also cite Zadvydas for the proposition that "an alien's detention presumptively comports with Due Process rights if it does not exceed six months." Opp. 13 [Doc. No. 21]. But there the Court was considering the question of indefinite detention "beyond the removal period" and after a determination that the detainee is "a risk to the community or unlikely to comply with the order of removal," 8 U.S.C. § 1231(a)(6), where the countries to which petitioners would be deported refused to receive them. See Zadvydas, 533 U.S. at 684–86. And again, critically, the petitioners had been convicted of crimes, see id., and had been afforded discretionary review of their detentions, see Zadvydas v. Underdown, 185 F.3d 279, 283 (5th Cir. 1999); Ma v. Reno, 208 F.3d 815, 819 (9th Cir. 2000).

---

[10] Based on the statistics at the time, post-removal-period detention lasted for less than 90 days in the majority of cases. Id. at 529.

These cases are inapplicable here. First and foremost, both Demore and Zadvydas addressed the Due Process rights of individuals whose convictions "were obtained following the full procedural protections our criminal justice system offers." Demore, 583 U.S. at 513; see also Zadvydas, 533 U.S. at 684–86. Here, in contrast, Respondents do not dispute that Petitioner has received no process as to his arrest or his detention.

In addition, Respondents have not disputed Petitioner's assertions that the Congress enacting the Laken Riley Act made no findings that "merely being arrested for . . . shoplifting . . . correlated with flight risk or dangerousness in any way." Pet.'s Mem. 14–15 [Doc. No. 27] (emphasis in original); see also id. at 14 n.10  (citing "only report produced by Congress in relation to the LRA . . . which contained no empirical data at all"). Respondents have failed to explain how detention without a bond hearing in such circumstances "serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings[.]" Demore, 538 U.S. at 528 (2003).

### c)  **Mathews** Factors

Mathews v. Eldridge, 424 U.S. 319, 335 (1976), sets out a three-part test that courts have used to assess due process challenges by individuals detained under Section 1226 and seeking a bond hearing. See, e.g., Hernandez-Lara, 10 F.4th at 27–28 (detention under Section 1226(a)); Black v. Decker, 103 F.4th 133, 147–48 (2d Cir. 2024) (applying Mathews factors to due process challenge to prolonged detention under Section 1226(c), citing cases from the First, Third, Fourth, and Ninth Circuits, and noting "[t]he Supreme Court has also, in other contexts, applied Mathews to examine the adequacy of procedures provided to individuals in custody, including noncitizens legally present in the United States"). Under Mathews,

> identification of the specific dictates of due process generally requires
> consideration of three distinct factors: First, the private interest that will be affected

by the official action; <u>second</u>, the risk of an erroneous deprivation of such interest
through the procedures used, and the probable value, if any, of additional or
substitute procedural safeguards; and <u>finally</u>, the Government's interest, including
the function involved and the fiscal and administrative burdens that the additional
or substitute procedural requirement would entail.

424 U.S. at 335 (emphasis added).

Undoubtedly, the private interest at stake here "is the most elemental of liberty
interests—the interest in being free from physical detention[.]" <u>Hamdi v. Rumsfeld</u>, 542 U.S.
507, 529 (2004); <u>see also</u> <u>Hernandez-Lara</u>, 10 F.4th at 28. Petitioner notes other exacerbating
factors, including the anticipated length of detention, and offers data from 2022–2024 showing
that the median period of detention for individuals similarly situated—charged with entry
without inspection, denied release on bond, and with an application for relief filed—was 162
days. <u>See</u> Decl. of David Hausman ISO Pet. ¶¶ 5–9 [Doc. No. 30]. Petitioner notes that he had
already been detained for two weeks when he filed the present Petition for Writ of Habeas
Corpus, and only after that was a Notice to Appear served on him to initiate his removal
proceedings. <u>See</u> Dill Decl., Ex. B (Notice to Appear) [Doc. No. 33-2]. Petitioner has been
detained at this point for more than 60 days.

The risk of erroneous deprivation of Petitioner's liberty is high where, as discussed
above, his detention is based on an arrest for which no charges have been filed and the
underlying conduct for which bears no relationship to dangerousness or flight risk. And "once
the flight risk justification evaporates, the only special circumstance [] present is the alien's
removable status itself, which bears no relation to a detainee's dangerousness." <u>Zadvydas</u>, 533
U.S. at 691–92.

The final factor "ultimately entails an assessment of the 'public interest.'" <u>Hernandez-
Lara</u>, 10 F.4th at 32 (quoting <u>Mathews</u>, 424 U.S. at 335, 347). In <u>Hernandez-Lara</u>, "[t]he
government fail[ed] to explain why its proffered interest in securing appearance at removal

proceedings and for deportation holds sway where a noncitizen is not a flight risk." Id. Indeed,

"limiting the use of detention to only those noncitizens who are dangerous or a flight risk may

save the government, and therefore the public, from expending substantial resources on needless

detention." Id. at 33 (citing Velasco Lopez v. Decker, 978 F.3d 842, 854 n.11 (2d Cir. 2020), for

budget data on daily costs of ICE detention). Furthermore, "such unnecessary detention imposes

substantial societal costs" such as reduced economic contributions and tax payments by detained

immigrants. Id. Here, the public has no interest in the detention without bond of someone against

whom no criminal charges are pending and who is an active member in his community. See, e.g.,

Bava Decl., Ex. I at ECF pp. 3, 5, 7, 9 [Doc. No. 32-9] (letters of support attesting to Petitioner's

volunteer work at local food pantry).

In sum, the Mathews factors weigh in favor of Petitioner, and the court finds that his

detention without a bond hearing violates his Due Process rights.

## IV.    Conclusion

For the foregoing reasons, the Petition is GRANTED. No later than September 10, 2025,

Petitioner must be provided a bond hearing. Any decision to retain Petitioner in custody

following the bond period shall set forth the reasons for the continued detention.

IT IS SO ORDERED.

September 5, 2025                                    /s/ Indira Talwani
                                                    United States District Judge